

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-07-297-CR

RANDALL DORNBUSCH                                    APPELLANT

V.

THE STATE OF TEXAS                                        STATE

------------

FROM COUNTY CRIMINAL COURT NO. 4 OF DENTON COUNTY

------------

## OPINION

------------

### I.    Introduction

Appellant Randall Dornbusch appeals his conviction for misdemeanor driving while intoxicated.  Appellant waived his right to a jury trial.  The trial court found Appellant guilty and sentenced him to 120 days' confinement, probated the sentence for fifteen months, and assessed a $300.00 fine.  In three points, Appellant challenges the legal and factual sufficiency of the evidence to support his conviction, and he challenges the constitutionality of

section 49.04 of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 49.04 (Vernon 2003). We affirm.

**II. Evidence**

The parties presented the following evidence at trial. Highland Village police sergeant Sheri Morrison testified that she was checking on a business around 12:30 a.m. on the morning of December 2, 2006. Morrison saw Appellant's vehicle in the parking lot of a nearby Applebee's restaurant. Morrison testified that the vehicle caught her attention because its headlights were on, it was in the back of the parking lot, and it was "parked oddly." Morrison did not immediately investigate Appellant's vehicle because she was still engaged in checking on the nearby business. Approximately forty-five minutes later, Morrison again observed Appellant's vehicle in the same spot with the headlights still on. Morrison called for backup. Highland Village police officer Alicia Bautista Gonzales responded to the call.

Gonzales testified that when she arrived, Appellant's vehicle was in the back of the Applebee's parking lot, and its lights were on. Gonzales and Morrison approached Appellant's vehicle and noticed the engine was running. Morrison testified that she could tell the engine was running because it was cold outside and she could see the exhaust, but she could not see any

2

indication that the brake lights were activated. Both Gonzales and Morrison testified that loud music was emanating from Appellant's vehicle.

Gonzales said that as she approached she could see Appellant "in the driver's seat hunched over the steering wheel." Both officers testified that it took multiple efforts of tapping on the window and speaking to Appellant for him to arouse from his hunched position. Gonzales noticed a smell of alcohol in the vehicle. Morrison testified that when she asked Appellant if he had been drinking, he initially denied that he had been, but later admitted to the officers that he had been drinking alcohol in Applebee's prior to getting into his vehicle.

Gonzales testified that Appellant's eyes were bloodshot, his speech was slurred, and he appeared disoriented. She asked Appellant if he had "any medical problems." Appellant denied any medical problems. Gonzales admitted that she informed Appellant that she could be looking at his situation from either a medical or criminal aspect. Gonzales testified that when Appellant asked what criminal aspect she was investigating, Gonzales responded "public intoxication." Gonzales then asked Appellant to exit his vehicle.

Gonzales performed a number of field-sobriety tests including the horizontal gaze nystagmus test, the one-legged stand, and the walk and turn. She testified that she found all six clues when performing the horizontal gaze nystagmus test. According to Gonzales, Appellant was unable to complete the

3

walk and turn or the one-legged stand, however, Gonzales testified that she did observe four clues during the walk and turn test. Gonzales said that she discontinued these tests before their completion because Appellant had fallen down and she feared he might hurt himself. The officers arrested Appellant.

Morrison could not recall who turned off Appellant's vehicle. But she testified that at some point in the encounter, she tried to remove the keys from the ignition but could not. Morrison said the officers asked Appellant how to remove the keys and he responded that the vehicle had to be in park in order for the keys to be removed from the ignition. Concerning whether Appellant's car was in park, the trial transcript contains this testimony by Morrison:

> [Morrison]: . . . And [Appellant] said as long as the vehicle is in park, that the key should come right out. So it was at that point that it was a -- you know, it was an automatic. And at that point I pressed it in and pushed it forward and realized that the car had been in drive and that that's why the keys wouldn't come out. So as soon as I slipped it into park, the keys came on out.
>
> [State]: Okay. So the car was actually in drive?
>
> [Morrison]: Yes, ma'am.
>
> [State]: Do you know what was preventing -- I mean, from your observation, do you know what was preventing the car from actually rolling or driving?
>
> [Morrison]: It was touching the curb in the parking place.
>
> [State]: Okay. The wheels were up against the curb?

4

[Morrison]: Uh-huh.

[State]: Okay. But it was in drive?

[Morrison]: It was not parked, no. I couldn't tell you if it was slipped up on the edge of drive or edge of neutral, but it was not in park.

During cross-examination, Morrison further clarified her testimony concerning whether Appellant's vehicle was in park or drive:

[Appellant's attorney]: Now, it's your testimony to [the trial court] that the car was in drive the entire time?

[Morrison]: My testimony is that the car was not in park. I couldn't tell you. When I went to move the gear shift, I didn't look down and see, you know, if it was sitting on D, if it was sitting on N, or if it was sitting on P. Obviously I thought the car was in park, or I wouldn't have been messing with somebody that was, you know, coming out of it.

[Appellant's attorney]: Right.

[Morrison]: When I moved the gear shift, it moved. It physically moved in my hand to move forward.

. . . .

[Morrison]: I mean, I couldn't tell you if it was [in drive] or was not. I knew it wasn't in park. I knew it moved. It moved a good amount in my hand.

Morrison testified that after placing Appellant under arrest, she searched his vehicle. She found a bottle of vodka that had not been opened. Morrison also found to-go containers, but testified she could not identify what restaurant

they were from. She also found a cup containing a "purple or dark liquid" that smelled of alcohol.

Appellant testified to his version of the events. He testified that Friday, December 1, 2006, at roughly 10:30 p.m., he had gone to Applebee's to meet his girlfriend for dinner. His girlfriend never showed. He said that while waiting, he consumed "a few drinks" and ordered food. He eventually got the food to go and took it to his car. Appellant testified that at that point, sometime near midnight, he reasoned that he had "a couple too many" alcoholic beverages while waiting "and didn't feel that [he] could make the drive home." Appellant stated that his plan was "to sit there and I guess wait until I felt like I could drive home." He also testified that he had not consumed any alcohol prior to being at Applebee's.

Appellant further testified that he turned the car's engine on for warmth because it was cold outside. According to Appellant, his vehicle's lights were on because his vehicle has a feature where the lights come on automatically when it is dark outside. When questioned about what was required to remove the keys from the ignition, Appellant testified that the car had to be in park and a foot had to be on the brake. When questioned about the cup of dark liquid, Appellant testified, "I don't know what was in the cup. And if I did [consume any alcohol once inside the vehicle after leaving Applebee's], it was whatever

6

was in the cup, if it was a beverage." When asked by the State whether he had the music loud in an effort to stay awake, he replied, "No." When asked why he didn't turn off the lights after sitting there for so long, Appellant replied "I just didn't think about it, to be honest with you."

The sole issue contested by Appellant at trial was whether he had "operated" the vehicle. In finding Appellant guilty, the trial court stated:

> [I]f I take the State's assumption that he had put the car in gear, I could say, oh, yippee, the facts are easy, you know, and I can find him guilty and go home . . . . But based on my looking at the law and [Appellant] was behind the wheel, the car was running -- I do not care about the lights, I don't care about the radio. The question, was the vehicle running. I'm finding his foot was not on the brake, his foot was not on the gas, and the car never moved from that spot. But based on what I've looked at under the case law, I'm finding [Appellant] guilty of the charge based on that fact scenario.

## III. Discussion

### A. Legal and Factual Sufficiency

In his first two points, Appellant complains that the evidence is legally and factually insufficient to prove beyond a reasonable doubt that he operated his vehicle.

### 1. Standards of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order

7

to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's determination is manifestly unjust. *Watson*, 204 S.W.3d at 414–15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the judgment. *Watson*, 204 S.W.3d at 417.

### 2. Application of Law to Facts

"A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place." TEX. PENAL CODE ANN. § 49.04(a). In

8

challenging the legal and factual sufficiency of the evidence to support his conviction, Appellant does not dispute that he was intoxicated at the time the officers found him in his car. Rather, Appellant argues that, from the totality of the circumstances, the evidence is not legally or factually sufficient to prove that he "operated" his vehicle while he was intoxicated.

There is no statutory definition of the term "operate." *Barton v. State*, 882 S.W.2d 456, 459 (Tex. App.—Dallas 1994, no pet.). However, the court of criminal appeals has held that, to find operation of a motor vehicle, "the totality of the circumstances must demonstrate that the defendant took action to affect the functioning of his vehicle that would enable the vehicle's use." *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995). In reaching its holding, the court repeated the reasoning enunciated in *Barton*:

> We do not accept the contention that to operate a vehicle within the meaning of the statute, the driver's personal effort must cause the automobile to either move or not move. *Purposely causing or restraining actual movement is not the only definition of 'operating' a motor vehicle.* In other words, we examine the totality of the circumstances to determine if [the defendant] exerted personal effort upon his vehicle [ . . . ] for its intended purpose.

*Id.* at 389 (emphasis added) (quoting *Barton*, 882 S.W.2d at 459); *see also Hearne v. State*, 80 S.W.3d 677, 680 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (holding that a reviewing court is to look at the totality of circumstances surrounding the entire incident in question to ascertain whether

9

the trial court properly determined if operation had occurred). Under this standard, "operating" a motor vehicle is interpreted very broadly. *Barton*, 882 S.W.2d at 459; *see Strong v. State*, 87 S.W.3d 206, 215 (Tex. App.— Dallas 2002, pet. ref'd). Because "operating a motor vehicle" is defined so broadly, any action that is more than mere preparation toward operating the vehicle would necessarily be an "action to affect the functioning of [a] vehicle in a manner that would enable the vehicle's use." *Strong*, 87 S.W.3d at 216 (citing *Barton*, 882 S.W.2d at 459). Any action would either not be more than mere preparation or it would fall within the broad definition of "operating a motor vehicle." *Strong*, 87 S.W.3d at 216 .

Numerous cases have upheld DWI arrests or convictions under the totality of circumstances test even though the person "operating" the motor vehicle was initially found to be asleep or unconscious. For instance, persons asleep or unconscious were found to be "operating" their motor vehicle when the vehicle was stopped by the roadway with its right front tire against the curb and engine running, gearshift in "Drive," and lights on, *Freeman v. State*, 69 S.W.3d 374, 375–76 (Tex. App.—Dallas 2002, no pet.); stopped in a moving lane of traffic with the engine running and the vehicle's owner in the driver's seat, *Hearne*, 80 S.W.3d at 680; and stopped on a roadway with the engine running, lights on, and the vehicle's operator sitting behind the steering wheel,

10

*State v. Savage*, 905 S.W.2d 272, 273 (Tex. App.—San Antonio 1995), *aff'd,* 933 S.W.2d 497 (Tex. Crim. App.1996).

Furthermore, prior to the adoption of the totality of circumstances test, persons who were asleep or unconscious were found to be "operating" their motor vehicle when the vehicle was stopped in the middle of the road with the engine running, gearshift in "Drive," and operator slumped behind the steering wheel with his foot on the brake, *Ray v. State*, 816 S.W.2d 97, 98 (Tex. App.—Dallas 1991, no writ); stopped in the roadway with the engine running, lights on, and the vehicle's owner sitting behind the steering wheel, *Pope v. State*, 802 S.W.2d 418, 420 (Tex. App.—Austin 1991, no writ); stopped in the roadway facing oncoming traffic with the engine running, lights on, and operator asleep in the driver's seat with his foot on the brake, *Hernandez v. State*, 773 S.W.2d 761, 762 (Tex. App.—San Antonio 1989, no writ); and found half in a ditch and half on a farm-to-market road with the operator alone behind the steering wheel with both feet on the floorboard beneath the steering wheel, *Reynolds v. State*, 744 S.W.2d 156, 158–59 (Tex. App.—Amarillo 1987, writ ref'd).

Appellant argues that these cases are distinguishable from his case because the facts of each of these cases indicate recent operation of a vehicle

on a roadway at some point.[1] However, a parking lot at a public place is not legally different than a roadway for purposes of a DWI arrest or conviction, and Appellant does not argue otherwise. *See, e.g., Shaub v. State*, 99 S.W.3d 253, 256 (Tex. App.—Fort Worth 2003, no pet.).

Appellant further argues that he is being punished for his decision to "sleep off" his intoxication rather than driving home drunk and that the only reasonable inference to be drawn from the evidence is that he used his vehicle to keep warm and not that he intended or actually did operate his vehicle. This court agrees that it is better to sleep off intoxication rather than engage in the pervasive societal problem of drunk driving. *See Hollin v. State*, 227 S.W.3d 117, 122 (Tex. App.—Houston [1st Dist.] 2006) (noting that DWI laws "have as their goals both prevention, punishment, and the removal of drunk drivers from the streets by incarceration.") But whether Appellant was merely keeping warm or "operating" his vehicle was a fact question for the trial court to resolve, and the trial court resolved it against him.

---

[1] Appellant also argues that this case is similar to a pair of cases from the Supreme Court of New Jersey and that we should reverse Appellant's conviction by applying the test found in those cases to the facts of this case. *See State v. Sweeney*, 192 A.2d 573, 573 (N.J. 1963); *State v. Daly*, 313 A.2d 194, 195 (N.J. 1973). However, these cases are inapplicable to this case because New Jersey does not apply the totality of circumstances test that the court of criminal appeals ascribes to; rather, New Jersey uses an "intent to move or drive" test. *Denton*, 911 S.W.2d at 389; *Daly*, 313 A.2d at 195.

To ascertain whether the trial court's resolution of this question was supported by legally and factually sufficient evidence, we examine the totality of circumstances to determine if Appellant took action to affect the functioning of his vehicle that would enable the vehicle's use. *Denton*, 911 S.W.2d at 389. In this case, all parties agree that Appellant's vehicle was found in the back of Applebee's parking lot with the headlights on, the engine running, the radio playing loudly, and Appellant sitting in the driver's seat either asleep or passed out. Further, there was testimony indicating that the vehicle was not in park and that the only thing keeping the vehicle from moving was the curb.[2] We hold that the evidence, viewed in light most favorable to the verdict, together with reasonable inferences therefrom, is legally sufficient to show that Appellant operated his vehicle while intoxicated. We overrule Appellant's first point.

Further, after viewing all the evidence in a neutral light, we hold that the proof of guilt is not so obviously weak as to undermine confidence in the verdict and is not greatly outweighed by contrary proof. The evidence is

---

[2] Appellant states twice that the trial court made an explicit finding that the vehicle was not in gear. However, as the State points out, the trial court did not make a finding regarding whether Appellant's car was in a specific gear.

13

therefore factually sufficient to show that Appellant operated his vehicle while intoxicated.  We overrule Appellant's second point.

### B.    Constitutionality of Section 49.04

In his third point, Appellant challenges the facial validity of section 49.04 of the Texas Penal Code.  *See* Tex. Penal Code Ann. § 49.04.  The gist of Appellant's argument, as can be gleaned from both the title of his third point and the analysis in his brief, is that the DWI statute's provision of "operating" exceeds the scope of its title, "Driving While Intoxicated."[3] *See id.*

Appellant may not challenge the sufficiency of the caption because the Texas Constitution makes it unlawful for this court to declare the statute void on the basis of an insufficient title.  Tex. Const. art. III, § 35(c); *see Baggett v. State*, 722 S.W.2d 700, 702 (Tex. Crim. App. 1987) (acknowledging that a

---

[3] Although Appellant cites federal cases involving constitutional issues of overbreadth and vagueness, he fails to analyze these doctrines.  Thus, Appellant has waived these issues and we decline to address them.  *See Strange v. Cont'l Cas. Co.*, 126 S.W.3d 676, 678 (Tex. App.—Dallas 2004, pet. denied), *cert. denied*, 543 U.S. 1076 (2005) (holding that an issue on appeal unsupported by argument presents nothing for the court to review); *see also Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284–85 (Tex. 1994) (discussing "long-standing rule" that point may be waived due to inadequate briefing); *Tello v. Bank One, N.A.*, 218 S.W.3d 109, 116 (Tex. App.—Houston [14th Dist.] 2007, no pet.) ("[W]e know of no authority obligating us to become advocates for a particular litigant through performing their research and developing their argument for them."); *Hall v. Stephenson,* 919 S.W.2d 454, 467 (Tex. App.—Fort Worth 1996, writ denied) (holding that an inadequately briefed point may be waived on appeal)*.*

court no longer has the power to declare an act of the legislature unconstitutional due to the insufficiency of its caption). Therefore, we overrule Appellant's third point.

## IV. Conclusion

Having overruled Appellant's three points, we affirm the trial court's judgment.

                              ANNE GARDNER
                              JUSTICE

PANEL B:   GARDNER, WALKER, and MCCOY, JJ.

MCCOY, J. filed a concurring opinion.

PUBLISH

DELIVERED: July 24, 2008

15



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 2-07-297-CR

RANDALL DORNBUSCH                                                        APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

------------

FROM COUNTY CRIMINAL COURT NO. 4 OF DENTON COUNTY

------------

## CONCURRING OPINION

------------

The purpose of section 49.04 of the Texas Penal Code is articulated in its title, "Driving While Intoxicated." The phraseology of the statute, however, utilizes the word "operating," instead of "driving," and is more expansive, but in my view, still under the umbrella of the logical and laudable intent of the statute—to protect people and property from vehicles driven by intoxicated persons.

Here, the vehicle had to be turned off by first placing the transmission in park, which was accomplished by one of the officers on the scene. Logic therefore instructs that the car was in park when the key was first inserted by the driver to start the car. Therefore, the car's transmission was removed from park by the driver to place it in the position found by the officer, and this action, in my view, is what constituted "operating" the vehicle. Had the driver simply wanted to enter his vehicle to warm up on a cold night, to sleep off his intoxicated state, or to do both, which are actions to be taken without leaving the parking lot, then there would have been no need to engage the transmission. Hence, I believe his actions fell under the ambit of the statute, and I concur with the majority's resolution of Dornbusch's first and second points and agree with their resolution of his third point.

BOB MCCOY
JUSTICE

PUBLISH

DELIVERED: July 24, 2008

2