COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-09-331-CR

 

 

CARLOS MENJIVAR                                                             APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM
THE 211TH DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I. 
Introduction

In one
point, Appellant Carlos Menjivar asserts that the evidence was legally and
factually insufficient to support the jury=s guilty
verdict in this felony driving while intoxicated (DWI) case.  We affirm.

 








II. 
Factual and Procedural History

Aaron
Landa, who had been working as a night security guard for a Huffines dealership
in Lewisville on the night in question, testified that he heard a loud noise at
approximately 4:00 a.m.  He described the
noise as the sound of a vehicle hitting something.  He went to investigate and, fifteen to twenty
seconds later, saw Menjivar slowly pull his Toyota pickup truck up to the curb
and bump against it.  He gave the
following testimony:

Q.  Now, when you got to the
other side [of the building], you saw a vehicle andCthat wasCwas that vehicle moving
at that time?

 

A.  Yes, it was.

 

Q.  Okay.  How fast was that vehicle going at that
point?

 

A.  Pretty slow.  About maybe five, seven miles an hour.

 

Q.  And did you see the vehicle
stop?

 

A.  I saw it come to aCaCa stop.

 

Q.  Okay.  And do you knowCdid you see the brake
lights come on or anything like that?

 

A.  When he hit the curb, yes.

 

Q.  So you saw the vehicle hit
the curb?

 

A.  I saw him come to a stop as
he hit the curb.  Okay.  I saw him come to a stop as he bumped into
the curb.

 








Menjivar=s
vehicle was on the wrong side of the road and faced the wrong direction of
traffic.  It was also damaged; the left
front tire was flat, the left rim was bent, and the left front bumper was bent.  However, Landa did not see any damaged
fences, poles, or cars that could have caused the damage.

Landa
testified that Menjivar Aopen[ed] his door and
proceed[ed] to get out of his vehicle.@  He stumbled, and two to four beer cans fell
out of the vehicle.  Landa was close
enough to Menjivar to observe that he appeared to be intoxicated and that he
smelled of alcohol.  Menjivar walked away
from his vehicle and went around the building=s
fenced-in area, which blocked him from Landa=s view
for five to seven minutes.  Landa called
9-1-1, and as he was speaking with an operator, Menjivar came back to his
vehicle, got inside, started the engine, and sat there.  He then turned the vehicle back off, got back
out, picked up the beer cans that had fallen out of the vehicle=s cab,
and threw them in the back of the truck.[2]








Lewisville
Police Officer Robert Limon responded to the 9-1-1 call.  Upon arriving, he saw a parked black pickup
truck with two flat tires on the driver=s side,
facing westbound in the eastbound lanes. 
Menjivar was in the driver=s seat
of the vehicle, but Officer Landa did not see Menjivar drive it.  Officer Landa=s
testimony was as follows:

Q.  All right.  Now, when you came on the scene, you saw the
vehicle there.  Was the vehicle operating
at that time?  

 

A.  The vehicle was on, but no,
it wasn=t moving or anything.

 

Q.  You=re saying it was on?

 

A.  Yes.

 

Q.  So the keys were in the
ignition?

 

A.  Yes.

 

When
Officer Limon first made contact with Menjivar, he noticed that Menjivar Ahad an
odor of alcoholic beverage on him.@  Officer Landa asked Menjivar to get out of
the vehicle so that he could interview him. 
Once Menjivar was out of the vehicle, Officer Landa noticed that
Menjivar had his jacket on upside-down.








Officer
Limon asked Menjivar if he had had anything to drink.  Menjivar replied that he=d had a
Bud Light at 10:00 p.m.; he later stated that his last drink was at 3:45.  Officer Landa asked Menjivar where he was
headed. Menjivar replied that he was going to work at Sam=s
Warehouse on Main Street, but he later said that he was headed home from a
friend=s house.
Officer Limon testified that he noticed two cans of Bud Light about three feet
from Menjivar=s vehicle.  Menjivar told the officer that he had been
drinking Bud Light, but he denied that the cans belonged to him.  He admitted to Officer Landa that his
fingerprints might be on the cans.

Officer
Limon administered three field sobriety testsCMenjivar
failed two of them.  Officer Landa formed
the opinion that Menjivar was intoxicated based on talking with him, field
testing, and physical observations.  He
placed Menjivar under arrest for DWI and transported him to the police station.








At the
station, Officer Limon gave Menjivar his statutory warnings for blood and
breath samples, and Menjivar agreed to a blood draw.  The two blood tests revealed ethyl alcohol in
the amounts of .21 and .22 respectively.[3]  Officer Limon also read Menjivar his Miranda
warnings.[4]  Menjivar waived his rights and told Officer
Limon that he had been driving the vehicle prior to Officer Limon=s
arrival and that he had consumed alcohol. 
He told Officer Limon that he did not feel that he was intoxicated.

Officer
Limon testified that he did not speak with Landa.  Lewisville Police Officer Chris Kautz, who
arrived at the scene after Officer Limon, took Landa=s
statement.  Officer Kautz testified that
the witness had called in and said that he had seen or heard a vehicle have a
collision but did not see anything that looked like it had been hit.  When Officer Kautz arrived, a Toyota pickup
was facing the wrong direction on the left side of Huffines Street, which is
adjacent to the Interstate 35 frontage road. 
The vehicle was up against the curb and had a damaged left-front tire.[5]  Officer Kautz testified that Menjivar=s eyes
were red and watery, he smelled of alcohol, and his jacket was
upside-down.  There was a beer can Ajust
outside the truck near the sidewalk,@ which
Landa told him Menjivar had thrown out of the vehicle.

During
the defense=s case, Menjivar=s wife
testified that Menjivar called her after 2 a.m. that morning.  She spoke with him for five to ten
minutes.  She testified that he had
sounded like he had been drinking and that she believed he had been
intoxicated.








Menjivar
stipulated to his two prior DWI convictions, and the jury found him guilty of
felony DWI.  The trial court sentenced
him to five years= confinement, and this appeal
followed.

III. 
Operation of a Vehicle

Section
49.04(a) of the Texas Penal Code states, AA person
commits an offense if the person is intoxicated while operating a motor vehicle
in a public place.@ 
Tex. Penal Code Ann. ' 49.04(a)
(Vernon 2003).  In his sole point,
Menjivar argues that the evidence was insufficient to show that he was Aoperating@ a motor
vehicle.[6]


A.  Standards of Review

In reviewing the legal sufficiency of the
evidence to support a conviction, we view all of the evidence in the light most
favorable to the prosecution in order to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235
S.W.3d 772, 778 (Tex. Crim. App. 2007).

 








This
standard gives full play to the responsibility of the trier of fact to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts. 
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235
S.W.3d at 778.  The trier of fact is the
sole judge of the weight and credibility of the evidence.  See Tex. Code Crim. Proc. Ann. art.
38.04 (Vernon 1979); Brown v. State, 270 S.W.3d 564, 568 (Tex. Crim.
App. 2008), cert. denied, 129 S. Ct. 2075 (2009).  Thus, when performing a legal sufficiency
review, we may not re-evaluate the weight and credibility of the evidence and
substitute our judgment for that of the factfinder. Dewberry v. State, 4
S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131
(2000).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@ 
Hooper v. State, 214 S.W.3d 9, 16B17 (Tex.
Crim. App. 2007).  We must presume that
the factfinder resolved any conflicting inferences in favor of the prosecution
and defer to that resolution.  Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.








When
reviewing the factual sufficiency of the evidence to support a conviction, we
view all the evidence in a neutral light, favoring neither party. Steadman
v. State, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); Watson v. State,
204 S.W.3d 404, 414 (Tex. Crim. App. 2006). 
We then ask whether the evidence supporting the conviction, although
legally sufficient, is nevertheless so weak that the factfinder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
factfinder=s determination is manifestly
unjust.  Steadman, 280 S.W.3d at
246; Watson, 204 S.W.3d at 414B15,
417.  To reverse under the second ground,
we must determine, with some objective basis in the record, that the great
weight and preponderance of all the evidence, although legally sufficient,
contradicts the verdict.  Watson,
204 S.W.3d at 417.  

Unless
we conclude that it is necessary to correct manifest injustice, we must give
due deference to the factfinder=s
determinations, Aparticularly those
determinations concerning the weight and credibility of the evidence.@  Johnson v. State, 23 S.W.3d 1, 9 (Tex.
Crim. App. 2000); see Steadman, 280 S.W.3d at 246.  Evidence is always factually sufficient when
it preponderates in favor of the conviction. 
Steadman, 280 S.W.3d at 247; see Watson, 204 S.W.3d at
417. 








In
determining whether the evidence is factually insufficient to support a
conviction that is nevertheless supported by legally sufficient evidence, it is
not enough that this court Aharbor a
subjective level of reasonable doubt to overturn [the] conviction.@  Watson, 204 S.W.3d at 417.   We cannot conclude that a conviction is
clearly wrong or manifestly unjust simply because we would have decided
differently than the jury or because we disagree with the jury=s
resolution of a conflict in the evidence. 
Id.  We may not simply substitute
our judgment for the factfinder=s.  Johnson, 23 S.W.3d at 12; Cain v.
State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s
determination of the weight to be given contradictory testimonial evidence
because resolution of the conflict Aoften
turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at 8.  Our deference in this regard safeguards the
defendant=s right to a trial by jury.  Lancon v. State, 253 S.W.3d 699, 704
(Tex. Crim. App. 2008).       

B.  Applicable Law

Menjivar
cites Denton v. State, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995), for
the proposition that operation of a vehicle is found when the totality of the
circumstances demonstrates that the defendant took action to affect the
functioning of his vehicle in a manner that would enable the vehicle=s use
and then argues that there was Ainsufficient
proof of operation presented at trial by any standard@ such
that his conviction must be reversed.








This
court has previously addressed the concept of Aoperating@ a
vehicle as contemplated by section 49.04(a) of the Texas Penal Code.  See Dornbusch v. State, 262 S.W.3d
432, 436B37 (Tex.
App.CFort
Worth 2008, no pet.).  In Dornbusch,
we affirmed the appellant=s DWI conviction as to the issue
of vehicle operation when the evidence showed that he had been sitting in his
vehicle, Aparked oddly@ in a
parking lot, with his headlights on, engine running, and the transmission not
in park.  See id. at 433B35.  We summarized the concept of operation of a vehicle
as follows: 

There is no statutory definition of the term Aoperate.@  However, the court of criminal appeals has
held that, to find operation of a motor vehicle, Athe totality of the
circumstances must demonstrate that the defendant took action to affect the
functioning of his vehicle that would enable the vehicle=s use.@  In reaching its holding, the court repeated
the reasoning enunciated in Barton:

 

We do not accept the contention that to operate a vehicle within the
meaning of the statute, the driver=s personal effort must cause the automobile to
either move or not move.  Purposely
causing or restraining actual movement is not the only definition of >operating= a motor vehicle.  In other words, we examine the totality of the
circumstances to determine if [the defendant] exerted personal effort upon his
vehicle [ . . . ] for its intended purpose.

 

Under this standard, Aoperating@ a motor vehicle is interpreted very
broadly.  Because Aoperating a motor vehicle@ is defined so broadly,
any action that is more than mere preparation toward operating the vehicle
would necessarily be an Aaction to affect the
functioning of [a] vehicle in a manner that would enable the vehicle=s use.@  Any action would either not be more than mere
preparation or it would fall within the broad definition of Aoperating a motor
vehicle.@  

 








Numerous cases have upheld DWI arrests or
convictions under the totality of circumstances test even though the person Aoperating@ the motor vehicle was
initially found to be asleep or unconscious. 
For instance, persons asleep or unconscious were found to be Aoperating@ their motor vehicle when
the vehicle was stopped by the roadway with its right front tire against the
curb and engine running, gearshift in ADrive,@ and lights on, . . . ; stopped in a moving lane
of traffic with the engine running and the vehicle=s owner in the driver=s seat, . . . ; and
stopped on a roadway with the engine running, lights on, and the vehicle=s operator sitting behind
the steering wheel.

 

Furthermore, prior to the adoption of the
totality of circumstances test, persons who were asleep or unconscious were
found to be Aoperating@ their motor vehicle when
the vehicle was stopped in the middle of the road with the engine running,
gearshift in ADrive,@ and operator slumped
behind the steering wheel with his foot on the brake, . . . ; stopped in the
roadway with the engine running, lights on, and the vehicle=s owner sitting behind
the steering wheel, . . . ; stopped in the roadway facing oncoming traffic with
the engine running, lights on, and operator asleep in the driver=s seat with his foot on
the brake, . . . ; and found half in a ditch and half on a farm‑to‑market
road with the operator alone behind the steering wheel with both feet on the
floorboard beneath the steering wheel.

 

Id. at 436B37
(internal citations omitted).

C.  Analysis








There is
legally sufficient evidence that Menjivar operated his vehicle.  See id.  Specifically, Officer Limon testified that
Menjivar told him that he had been driving the vehicle prior to Officer Limon=s
arrival.  Additionally, Officer Limon
testified that when he arrived, Menjivar was sitting in the vehicle behind the
steering wheel, with the keys in the ignition and the vehicle turned on.  See id.  The jury reasonably could have chosen to
believe this testimony.  See Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.








Furthermore,
Landa testified that he saw Menjivar behind the wheel of the damaged vehicle
when it rolled to a stop.  He saw
Menjivar exit the vehicle and leave the area and then saw him return, reenter
the vehicle, start the engine, and sit in the car.  Menjivar complains that Landa=s
testimony Ais so unbelievable that it must
be discarded@ with regard to the amount of
time it took him to drive to Menjivar=s
vehicle after hearing the loud noise and as to Menjivar=s
identity.[7]  However, the jury also heard Officer Limon=s
testimony that Menjivar was in the vehicle when he arrived and both officers=
testimonies that the vehicle had suffered some damage.  And although there were some inconsistencies
in the evidence presented by Landa and Officers Limon and Kautz, the jury had
the discretion to determine who and what to believe. Considering this and all
of the evidence set out above, we cannot conclude that the evidence in favor of
conviction is so weak that the jury=s
determination was clearly wrong and manifestly unjust or that conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
jury=s
determination was manifestly unjust.  See Steadman, 280 S.W.3d at 246; Watson,
204 S.W.3d at 414B15, 417.  Therefore, we conclude that the evidence is
also factually sufficient.  We overrule
Menjivar=s sole
point.

IV. 
Conclusion

Having
overruled Menjivar=s sole point, we affirm the
trial court=s judgment.

 

PER CURIAM

 

PANEL:  MCCOY, J.; LIVINGSTON,
C.J.; and DAUPHINOT, J.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  August 31, 2010











[1]See Tex. R. App. P. 47.4.





[2]On cross-examination,
Landa testified that Menjivar picked up the cans the first time that he got out
of the vehicle, before he wandered out of sight. Landa stated that he had
worked for the dealership for four monthsCthis incident occurred during the third monthCand that he quit when the
company instituted a background check policy because he had five felonies from
1998: attempted burglary, attempted theft, attempted theft of means of
transportation Atimes two,@ and use of a
vapor-releasing substance (Asniffing spray paint at the age of 18A).





[3]Joyce Ho, senior
toxicologist and lab manager of the Tarrant County Medical Examiner=s Office, testified that
the lab tests all blood samples twice. The legal limit for blood alcohol concentration
is .08.  See Tex. Penal Code Ann. ' 49.01(2)(B) (Vernon
2003). 





[4]Miranda v. Arizona, 384 U.S. 436, 86 S. Ct.
1602 (1966).





[5]Officer Kautz stated that
the wheel and rim were damaged Aas if it had hit something causing it to go flat
rather than just a normal, you know, nail in the tire or something of that
sort.@





[6]Menjivar does not
challenge the remaining elements of the offense, and there is ample evidence to
support them.





[7]Menjivar complains, AThen Landa allegedly
witnesses a driver . . . whom he sees for only seconds, walk away to a place
where he is observed by no one, then can be positive the same individual
returns five minutes later.@