

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-09-331-CR

CARLOS MENJIVAR                                                          APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

------------

FROM THE 211TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

In one point, Appellant Carlos Menjivar asserts that the evidence was legally and factually insufficient to support the jury's guilty verdict in this felony driving while intoxicated (DWI) case.  We affirm.

---

[1] ... *See* Tex. R. App. P. 47.4.

## II. Factual and Procedural History

Aaron Landa, who had been working as a night security guard for a Huffines dealership in Lewisville on the night in question, testified that he heard a loud noise at approximately 4:00 a.m. He described the noise as the sound of a vehicle hitting something. He went to investigate and, fifteen to twenty seconds later, saw Menjivar slowly pull his Toyota pickup truck up to the curb and bump against it. He gave the following testimony:

> Q. Now, when you got to the other side [of the building], you saw a vehicle and—that was—was that vehicle moving at that time?
>
> A. Yes, it was.
>
> Q. Okay. How fast was that vehicle going at that point?
>
> A. Pretty slow. About maybe five, seven miles an hour.
>
> Q. And did you see the vehicle stop?
>
> A. I saw it come to a—a—a stop.
>
> Q. Okay. And do you know—did you see the brake lights come on or anything like that?
>
> A. When he hit the curb, yes.
>
> Q. So you saw the vehicle hit the curb?
>
> A. I saw him come to a stop as he hit the curb. Okay. I saw him come to a stop as he bumped into the curb.

2

Menjivar's vehicle was on the wrong side of the road and faced the wrong direction of traffic. It was also damaged; the left front tire was flat, the left rim was bent, and the left front bumper was bent. However, Landa did not see any damaged fences, poles, or cars that could have caused the damage.

Landa testified that Menjivar "open[ed] his door and proceed[ed] to get out of his vehicle." He stumbled, and two to four beer cans fell out of the vehicle. Landa was close enough to Menjivar to observe that he appeared to be intoxicated and that he smelled of alcohol. Menjivar walked away from his vehicle and went around the building's fenced-in area, which blocked him from Landa's view for five to seven minutes. Landa called 9-1-1, and as he was speaking with an operator, Menjivar came back to his vehicle, got inside, started the engine, and sat there. He then turned the vehicle back off, got back out, picked up the beer cans that had fallen out of the vehicle's cab, and threw them in the back of the truck.[2]

---

[2] ... On cross-examination, Landa testified that Menjivar picked up the cans the first time that he got out of the vehicle, before he wandered out of sight. Landa stated that he had worked for the dealership for four months—this incident occurred during the third month—and that he quit when the company instituted a background check policy because he had five felonies from 1998: attempted burglary, attempted theft, attempted theft of means of transportation "times two," and use of a vapor-releasing substance ("sniffing spray paint at the age of 18").

Lewisville Police Officer Robert Limon responded to the 9-1-1 call. Upon arriving, he saw a parked black pickup truck with two flat tires on the driver's side, facing westbound in the eastbound lanes. Menjivar was in the driver's seat of the vehicle, but Officer Landa did not see Menjivar drive it. Officer Landa's testimony was as follows:

Q. All right. Now, when you came on the scene, you saw the vehicle there. Was the vehicle operating at that time?

A. The vehicle was on, but no, it wasn't moving or anything.

Q. You're saying it was on?

A. Yes.

Q. So the keys were in the ignition?

A. Yes.

When Officer Limon first made contact with Menjivar, he noticed that Menjivar "had an odor of alcoholic beverage on him." Officer Landa asked Menjivar to get out of the vehicle so that he could interview him. Once Menjivar was out of the vehicle, Officer Landa noticed that Menjivar had his jacket on upside-down.

Officer Limon asked Menjivar if he had had anything to drink. Menjivar replied that he'd had a Bud Light at 10:00 p.m.; he later stated that his last drink was at 3:45. Officer Landa asked Menjivar where he was headed.

4

Menjivar replied that he was going to work at Sam's Warehouse on Main Street, but he later said that he was headed home from a friend's house. Officer Limon testified that he noticed two cans of Bud Light about three feet from Menjivar's vehicle. Menjivar told the officer that he had been drinking Bud Light, but he denied that the cans belonged to him. He admitted to Officer Landa that his fingerprints might be on the cans.

Officer Limon administered three field sobriety tests—Menjivar failed two of them. Officer Landa formed the opinion that Menjivar was intoxicated based on talking with him, field testing, and physical observations. He placed Menjivar under arrest for DWI and transported him to the police station.

At the station, Officer Limon gave Menjivar his statutory warnings for blood and breath samples, and Menjivar agreed to a blood draw. The two blood tests revealed ethyl alcohol in the amounts of .21 and .22 respectively.[3] Officer Limon also read Menjivar his *Miranda* warnings.[4] Menjivar waived his rights and told Officer Limon that he had been driving the vehicle prior to

---

[3] ... Joyce Ho, senior toxicologist and lab manager of the Tarrant County Medical Examiner's Office, testified that the lab tests all blood samples twice. The legal limit for blood alcohol concentration is .08. *See* Tex. Penal Code Ann. § 49.01(2)(B) (Vernon 2003).

[4] ... *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

Officer Limon's arrival and that he had consumed alcohol. He told Officer Limon that he did not feel that he was intoxicated.

Officer Limon testified that he did not speak with Landa. Lewisville Police Officer Chris Kautz, who arrived at the scene after Officer Limon, took Landa's statement. Officer Kautz testified that the witness had called in and said that he had seen or heard a vehicle have a collision but did not see anything that looked like it had been hit. When Officer Kautz arrived, a Toyota pickup was facing the wrong direction on the left side of Huffines Street, which is adjacent to the Interstate 35 frontage road. The vehicle was up against the curb and had a damaged left-front tire.[5] Officer Kautz testified that Menjivar's eyes were red and watery, he smelled of alcohol, and his jacket was upside-down. There was a beer can "just outside the truck near the sidewalk," which Landa told him Menjivar had thrown out of the vehicle.

During the defense's case, Menjivar's wife testified that Menjivar called her after 2 a.m. that morning. She spoke with him for five to ten minutes. She testified that he had sounded like he had been drinking and that she believed he had been intoxicated.

---

[5]... Officer Kautz stated that the wheel and rim were damaged "as if it had hit something causing it to go flat rather than just a normal, you know, nail in the tire or something of that sort."

6

Menjivar stipulated to his two prior DWI convictions, and the jury found him guilty of felony DWI. The trial court sentenced him to five years' confinement, and this appeal followed.

### III. Operation of a Vehicle

Section 49.04(a) of the Texas Penal Code states, "A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place." Tex. Penal Code Ann. § 49.04(a) (Vernon 2003). In his sole point, Menjivar argues that the evidence was insufficient to show that he was "operating" a motor vehicle.[6]

### A. Standards of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw

---

[6] Menjivar does not challenge the remaining elements of the offense, and there is ample evidence to support them.

7

reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is

nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414–15, 417. To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, although legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

Unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); *see Steadman*, 280 S.W.3d at 246. Evidence is always factually sufficient when it preponderates in favor of the conviction. *Steadman*, 280 S.W.3d at 247; *see Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Watson*, 204 S.W.3d at 417. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would

9

have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id.* We may not simply substitute our judgment for the factfinder's. *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Our deference in this regard safeguards the defendant's right to a trial by jury. *Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008).

B. Applicable Law

Menjivar cites *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995), for the proposition that operation of a vehicle is found when the totality of the circumstances demonstrates that the defendant took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use and then argues that there was "insufficient proof of operation presented at trial by any standard" such that his conviction must be reversed.

This court has previously addressed the concept of "operating" a vehicle as contemplated by section 49.04(a) of the Texas Penal Code. *See Dornbusch*

*v. State*, 262 S.W.3d 432, 436–37 (Tex. App.—Fort Worth 2008, no pet.).

In *Dornbusch*, we affirmed the appellant's DWI conviction as to the issue of vehicle operation when the evidence showed that he had been sitting in his vehicle, "parked oddly" in a parking lot, with his headlights on, engine running, and the transmission not in park. *See id.* at 433–35. We summarized the concept of operation of a vehicle as follows:

> There is no statutory definition of the term "operate." However, the court of criminal appeals has held that, to find operation of a motor vehicle, "the totality of the circumstances must demonstrate that the defendant took action to affect the functioning of his vehicle that would enable the vehicle's use." In reaching its holding, the court repeated the reasoning enunciated in *Barton*:
>
>> We do not accept the contention that to operate a vehicle within the meaning of the statute, the driver's personal effort must cause the automobile to either move or not move. *Purposely causing or restraining actual movement is not the only definition of 'operating' a motor vehicle.* In other words, we examine the totality of the circumstances to determine if [the defendant] exerted personal effort upon his vehicle [ . . . ] for its intended purpose.
>
> Under this standard, "operating" a motor vehicle is interpreted very broadly. Because "operating a motor vehicle" is defined so broadly, any action that is more than mere preparation toward operating the vehicle would necessarily be an "action to affect the functioning of [a] vehicle in a manner that would enable the vehicle's use." Any action would either not be more than mere preparation or it would fall within the broad definition of "operating a motor vehicle."
>
> Numerous cases have upheld DWI arrests or convictions under the totality of circumstances test even though the person

11

"operating" the motor vehicle was initially found to be asleep or unconscious. For instance, persons asleep or unconscious were found to be "operating" their motor vehicle when the vehicle was stopped by the roadway with its right front tire against the curb and engine running, gearshift in "Drive," and lights on, . . . ; stopped in a moving lane of traffic with the engine running and the vehicle's owner in the driver's seat, . . . ; and stopped on a roadway with the engine running, lights on, and the vehicle's operator sitting behind the steering wheel.

Furthermore, prior to the adoption of the totality of circumstances test, persons who were asleep or unconscious were found to be "operating" their motor vehicle when the vehicle was stopped in the middle of the road with the engine running, gearshift in "Drive," and operator slumped behind the steering wheel with his foot on the brake, . . . ; stopped in the roadway with the engine running, lights on, and the vehicle's owner sitting behind the steering wheel, . . . ; stopped in the roadway facing oncoming traffic with the engine running, lights on, and operator asleep in the driver's seat with his foot on the brake, . . . ; and found half in a ditch and half on a farm-to-market road with the operator alone behind the steering wheel with both feet on the floorboard beneath the steering wheel.

*Id*. at 436–37 (internal citations omitted).

C. Analysis

There is legally sufficient evidence that Menjivar operated his vehicle. *See id.* Specifically, Officer Limon testified that Menjivar told him that he had been driving the vehicle prior to Officer Limon's arrival. Additionally, Officer Limon testified that when he arrived, Menjivar was sitting in the vehicle behind the steering wheel, with the keys in the ignition and the vehicle turned on. *See*

12

*id.* The jury reasonably could have chosen to believe this testimony. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

Furthermore, Landa testified that he saw Menjivar behind the wheel of the damaged vehicle when it rolled to a stop. He saw Menjivar exit the vehicle and leave the area and then saw him return, reenter the vehicle, start the engine, and sit in the car. Menjivar complains that Landa's testimony "is so unbelievable that it must be discarded" with regard to the amount of time it took him to drive to Menjivar's vehicle after hearing the loud noise and as to Menjivar's identity.[7] However, the jury also heard Officer Limon's testimony that Menjivar was in the vehicle when he arrived and both officers' testimonies that the vehicle had suffered some damage. And although there were some inconsistencies in the evidence presented by Landa and Officers Limon and Kautz, the jury had the discretion to determine who and what to believe. Considering this and all of the evidence set out above, we cannot conclude that the evidence in favor of conviction is so weak that the jury's determination was clearly wrong and manifestly unjust or that conflicting evidence so greatly outweighs the evidence supporting the conviction that the jury's determination

---

[7] Menjivar complains, "Then Landa allegedly witnesses a driver . . . whom he sees for only seconds, walk away to a place where he is observed by no one, then can be positive the same individual returns five minutes later."

13

was manifestly unjust.  *See Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414–15, 417.  Therefore, we conclude that the evidence is also factually sufficient.  We overrule Menjivar's sole point.

## IV.  Conclusion

Having overruled Menjivar's sole point, we affirm the trial court's judgment.

PER CURIAM

PANEL:  MCCOY, J.; LIVINGSTON, C.J.; and DAUPHINOT, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 31, 2010

14