

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00324-CR

———————————————

CHRISTOPHER WILKINS, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 362nd District Court
Denton County, Texas
Trial Court No. F18-879-362

Before Sudderth, C.J.; Womack and Wallach, JJ.
Memorandum Opinion by Justice Wallach

# MEMORANDUM OPINION

Appellant Christopher Richard Wilkins appeals his conviction for felony driving while intoxicated (DWI) enhanced by a previous felony DWI conviction. Wilkins raises two issues on appeal. Because Wilkins's second issue, sufficiency of the evidence, would if sustained provide him the greatest relief, i.e., an acquittal, we will address that contention first.[1] *Chaney v. State*, 314 S.W.3d 561, 565 n.6 (Tex. App.—Amarillo 2010, pet. ref'd). Finding the evidence sufficient, we will next address his first issue in which he asserts that the trial court erred by denying his motion to suppress his incriminating statement because it was taken in violation of *Miranda v. Arizona* and Article 38.22 of the Texas Code of Criminal Procedure. We affirm.

## I.    Background facts

At 5:00 a.m. on December 3, 2017, Brandon Johnson was driving north on I-35E in Corinth, Texas when he saw a red Ford Mustang stopped in the right-hand lane of traffic. Because it was dark outside and the Mustang did not have any lights on, Johnson sensed that this situation was unsafe, so he called 911. Denton County

---

[1]As Professors Dix and Dawson explain: "An appellant . . . is not entitled to have an appellate court first consider the appellant's complaints concerning improperly admitted evidence and, if it resolves any of those in favor of the appellant, to then, second, consider the sufficiency of the properly-admitted evidence to support the conviction." *Moff v. State*, 131 S.W.3d 485, 490 (Tex. Crim. App. 2004) citing George E. Dix & Robert O. Dawson, 43A Texas Practice, Criminal Practice and Procedure § 43.531, at 742 (2d ed. 2001).

911 dispatcher Jamye Arrington testified that after receiving multiple calls reporting the parked car, Corinth police officers were sent to inspect the scene.

Officer Samuel Kading of the Corinth Police Department was the first to arrive. Officer Kading saw a red Ford Mustang parked in the far-right lane of the interstate, which at that point is a four-lane highway on each side. The officer noted that the part of I-35E where the Mustang was parked is especially dangerous because it is downhill from a crest and has fewer highway lights, which reduces visibility for motorists approaching from behind.

Officer Kading approached the vehicle on the passenger side and saw that the vehicle's interior and exterior lights were off, its engine was running, its transmission was in neutral, and its emergency brake was activated. Officer Kading saw two men in the Mustang—the driver and a passenger—both wearing seatbelts and slumped over asleep. The officer also saw two open beer cans in the vehicle's center console, another open beer can between the driver's legs, and an open thirty-pack of beer in the passenger's compartment.

Officer Kading tried to wake the two men in the Mustang, but neither responded to his voice or to the light from his flashlight. After Kading repeatedly banged on the passenger side window, the passenger woke up. Before helping the passenger out of the Mustang, Officer Kading instructed him to turn off the car's engine.

At about the time that Officer Kading maneuvered the passenger out of the car, Corporal Derek Kirkwood of the Corinth Police Department and Deputy James Echols

3

of the Denton County Sheriff's Office arrived to assist and block traffic from the rear of the parked vehicle. Officer Kading was then finally able to pull the driver, later identified as Wilkins, from his seat.

Upon encountering Wilkins, Officer Kading immediately noticed a strong odor of alcohol. Further, Officer Kading noticed that Wilkins was groggy, had a hard time walking, and had bloodshot eyes. Because the officer was worried that Wilkins might run towards traffic, he handcuffed Wilkins and placed him in the backseat of his car; Wilkins did not appear to understand that he was parked on a busy highway.

Because there was a fair amount of traffic on the highway at that time, Officer Kading concluded that it was not a safe location to conduct a DWI investigation. As a result, Officer Kading drove Wilkins to the Corinth Police Department, located a mile away, in order to safely administer the standardized field sobriety tests.

When they reached the police station, Officer Kading removed Wilkins's handcuffs but informed him, "I am going to go through my tests [field sobriety] and then you are going to be arrested for driving while intoxicated." The officer also told Wilkins that he could "either do the test thing and then go inside [to the police department] or go straight inside." When Wilkins exclaimed, "[Y]ou said you are going to do your tests and then you are going to arrest me," the officer responded, "[I]f you fail." Following that exchange, Officer Kading asked Wilkins what the purpose of his driving had been and how much alcohol he had consumed. Wilkins admitted that he had consumed three or four beers and explained that he had planned to drive from his

4

sister's home in Coppell to his home in Oklahoma, dropping his uncle off in Denton on the way. After Officer Kading questioned Wilkins, he administered the field sobriety tests and determined that two of the three tests indicated that Wilkins was intoxicated.

Wilkins was subsequently charged with felony driving while intoxicated enhanced by a previous felony conviction for driving while intoxicated. The trial court found Wilkins guilty, and Wilkins pled true to the enhancement paragraph. The trial court subsequently sentenced Wilkins to twelve years' imprisonment.

## II. Sufficiency of the evidence

Wilkins argues in his second issue that the evidence is insufficient to support the trial court's judgment of conviction. Specifically, Wilkins claims that without his statement in which he "indicated that he was the driver" of the Mustang and had been drinking, this "case would be without support for conviction." Additionally, Wilkins claims that even with the admission of his statement, there is no evidence demonstrating that he operated the Mustang or that he was intoxicated. We disagree.

### A. Standard of review

Federal due process requires that the State prove beyond a reasonable doubt every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 2787 (1979); *see* U.S. Const. amend. XIV. The *Jackson* standard of review is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim.

App. 2010) (overruling *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996)). Under this standard, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson,* 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

## B.    Applicable law

To establish the offense of driving while intoxicated, the State must prove that the defendant was intoxicated while operating a motor vehicle. Tex. Penal Code Ann. § 49.04(a). A person is intoxicated when he does not have the "normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, or a combination of two or more of those substances, or any other substance into the body." *Id.* § 49.01(2)(A). Intoxication, like operation, may be proved by circumstantial evidence. *Paschall v. State*, 285 S.W.3d 166, 177 (Tex. App.—Fort Worth 2009, pet. ref'd) (citing *Smithhart v. State*, 503 S.W.2d 283, 285 (Tex. Crim. App. 1973).

The Penal Code does not define the term "operating." *Id.*; *see Kirsch v. State*, 357 S.W.3d 645, 650 (Tex. Crim. App. 2012). The court of criminal appeals, however, has held that to find operation of a motor vehicle, "the totality of the circumstances must demonstrate that the defendant took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use." *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995). Under this standard, "operating" a motor vehicle is

interpreted broadly. *White v. State*, 412 S.W.3d 125, 128 (Tex. App.—Eastland 2013, no pet.); *Dornbusch v. State*, 262 S.W.3d 432, 436 (Tex. App.—Fort Worth 2008, no pet.). "[W]hile driving does involve operation, operation does not necessarily involve driving." *Denton*, 911 S.W.2d at 389. Because "operating" is defined so broadly, "any action that is more than mere preparation toward operating the vehicle would necessarily be an 'action to affect the functioning of [a] vehicle in a manner that would enable the vehicle's use.'" *White*, 412 S.W.3d at 129 (quoting *Barton v. State*, 882 S.W.2d 456, 459 (Tex. App.—Dallas 1994, no pet.)); *Dornbusch*, 262 S.W.3d at 436. The action need not be successful in causing the vehicle to function for the person to be operating it. *White*, 412 S.W.3d at 129; *Smith v. State*, 401 S.W.3d 915, 919 (Tex. App.—Texarkana 2013, pet. ref'd).

## C. All admitted evidence is considered in a sufficiency review.

Wilkins claims that the evidence is insufficient when "[t]aking the statements subject to the suppression hearing out of the body of proof." However, when performing a sufficiency review, we must consider all the evidence admitted at trial, even if it was improperly admitted. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016); *Moff*, 131 S.W.3d at 489–90. This is our task even if we reverse and remand based on error in admitting evidence. *Moff*, 131 S.W.3d at 490. Hence, we will consider Wilkins's complained-of statement in our review of the evidence.

7

**D.    The evidence was sufficient to support the trial court's verdict.**

Based on the facts of this case, a rational trier of fact could have found beyond a reasonable doubt that Wilkins was the driver of the Mustang and that he was intoxicated when he drove the vehicle. Wilkins was found passed out behind the wheel of a vehicle in the northbound lane of traffic on I-35E. Moreover, the vehicle contained an abundance of alcohol. Wilkins had an open beer can between his legs, and the vehicle's console contained two open beer cans. Police also found an open thirty-can box of beer inside the vehicle that was accessible to the driver. Additionally, when police officers were finally able to awaken Wilkins and pull him out of the driver's seat, they noticed that he smelled like alcohol, had bloodshot eyes, and had trouble standing and walking without assistance. Wilkins admitted that he drank alcohol in the hours before he was discovered asleep in the parked Mustang. Also, Officer Kading testified that Wilkins failed two of the three field sobriety tests, confirming the officer's belief that Wilkins was intoxicated. *See Finley v. State*, 809 S.W.2d 909, 913 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd) (holding defendant's poor performance on standardized field sobriety tests is evidence of intoxication, and Texas courts consistently uphold DWI convictions based upon opinion testimony of police officers who observe a defendant's unsatisfactory performance on field sobriety tests). Based on these facts, the trial court could reasonably infer that Wilkins had lost the normal use of his mental or physical faculties by reason of the introduction of alcohol into his body. *See* Tex. Penal Code Ann. § 49.01(2)(A).

8

As to the "operating" prong, courts applying the totality of the circumstances test in cases similar to this one have held that the evidence was sufficient to prove operation. *See, e.g.*, *Priego v. State*, 457 S.W.3d 565, 570–71 (Tex. App.—Texarkana 2015, pet. ref'd) (holding evidence of "operating" sufficient when defendant found sleeping in vehicle in parking lot with engine running and gear selector in park position); *Dornbusch*, 262 S.W.3d at 437–38 (holding evidence of "operating" sufficient when defendant found sleeping in vehicle parked oddly in parking lot with engine running and lights on); *Hearne v. State*, 80 S.W.3d 677, 678–80 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (holding evidence of "operating" sufficient when defendant found sleeping in vehicle parked in moving lane of traffic with engine running and gearshift in park); *see also Shields v. State*, No. 04-11-00397-CR, 2012 WL 219432, at *3 (Tex. App.—San Antonio Jan. 25, 2012, pet. ref'd) (mem. op., not designated for publication) (holding evidence of "operating" sufficient when defendant found unconscious in driver's seat of vehicle parked between two moving lanes of traffic with engine running). Similarly, here, the evidence is sufficient to support the trial court's finding that Wilkins operated the vehicle. Wilkins was found asleep in the driver's seat of a vehicle with the engine running that was parked in a busy lane of highway traffic. Both Wilkins and his passenger were buckled into their seats, and Wilkins had an open can of beer sitting between his legs. Further, Wilkins informed Officer Kading that he had driven from Coppell to Corinth in order to drop off his uncle in Denton. Moreover, there is no evidence in the record that tends to show that anyone else other than Wilkins operated

9

the vehicle. Finally, in his appellate brief, Wilkins twice admits that he drove the Mustang. Wilkins concedes that in his statement to Officer Kading he "indicated that he was the driver."

Wilkins relies on *Reddie v. State,* a case in which this court reversed a DWI conviction on sufficiency grounds, to argue that the evidence is insufficient to show that he drove the Mustang. 736 S.W.2d 923 (Tex. App.—San Antonio 1987, pet. ref'd). Wilkins claims that there is even less evidence of operation in his case than there was in *Reddie.* However, as this court has previously pointed out, any reliance on *Reddie* is misplaced because it predates *Geesa v. State*, 820 S.W.2d 154 (Tex. Crim. App. 1991), *overruled on other grounds by Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000). *See Anderson v. State*, No. 02-15-00405-CR, 2016 WL 1605330, at *4 (Tex. App.—Fort Worth Apr. 21, 2016, no pet.) (mem. op., not designated for publication). In *Geesa*, the Texas Court of Criminal Appeals abandoned the alternative-reasonable-hypothesis sufficiency analysis that had required "[a] conviction based on circumstantial evidence [to] exclude every other reasonable hypothesis except the guilt of the accused." *Carlsen v. State*, 654 S.W.2d 444, 447 (Tex. Crim. App. 1983), *overruled by Geesa*, 820 S.W.2d at 161. Post-*Geesa*, courts examine both direct and circumstantial evidence in the same manner; reasonable inferences are not to be disregarded when they can be drawn from circumstantial evidence. *See Acosta v. State,* 429 S.W.3d 621, 625 (Tex. Crim. App. 2014); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014); *Hearne*, 80 S.W.3d at 680. We are thus precluded from following the pre-*Geesa* authorities cited by Wilkins and

instead follow the numerous post-*Geesa* cases upholding DWI convictions by holding sufficient evidence of the "operating" element of DWI exists under circumstances similar to those here. *See, e.g.*, *Priego*, 457 S.W.3d at 570–71; *Shields*, 2012 WL 219432, at *3; *Dornbusch*, 262 S.W.3d at 437–38; *Hearne*, 80 S.W.3d at 678–80. Accordingly, we hold that the trial court could reasonably infer that Wilkins took action to affect the functioning of the Mustang in a manner that would enable the Mustang's use. *Denton*, 911 S.W.2d at 390.

Considering the evidence in the light most favorable to the verdict, the totality of the circumstances supports an inference that Wilkins operated the Mustang when he was intoxicated; that is, the evidence is sufficient to support the trial court's finding that Wilkins committed the offense of driving while intoxicated. *See Denton*, 911 S.W.2d at 390; *Priego*, 457 S.W.3d at 570–71; *Dornbusch*, 262 S.W.3d at 437–38; *Hearne*, 80 S.W.3d at 678–80; *see also Shields*, 2012 WL 219432, at *3. Accordingly, we overrule Wilkins's second issue on appeal.

## III. Any error in the admission of Wilkins's statement was harmless beyond a reasonable doubt.

In his first issue, Wilkins contests the admission of his incriminating statement.

### A. Relevant facts

After Officer Kading had taken Wilkins to the Corinth police station and informed Wilkins that he would be conducting field sobriety tests, the officer asked Wilkins where he had been driving to and also asked how much alcohol he had

11

consumed. Wilkins admitted that he had consumed three or four beers and explained that he had planned to drive from his sister's home in Coppell to his home in Oklahoma.

While Officer Kading was on the stand and before the State elicited testimony regarding Wilkins's incriminating statement, Wilkins moved to suppress the statement, arguing that his *Miranda* rights had been violated. Specifically, Wilkins argued that he was in custody at the time he made the statement. Wilkins further claimed that Officer Kading believed he had probable cause to arrest Wilkins at the time he made his statement and that the officer communicated this to Wilkins by stating that he planned to arrest Wilkins after conducting the field sobriety tests. The trial court denied Wilkins's motion to suppress because Officer Kading later informed Wilkins that he would arrest him *if* he failed the field sobriety tests.

On appeal, Wilkins claims that the admission of his statement violated his constitutional *Miranda* rights and his statutory rights under Article 38.22 of the Texas Code of Criminal Procedure because the statement was the product of unwarned custodial interrogation. *See Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966); *Jordy v. State*, 969 S.W.2d 528, 530–31 (Tex. App.—Fort Worth 1998, no pet.). For the purpose of this analysis, we will assume without deciding, that the admission of Wilkins's statement was error and proceed directly to the harm analysis.

## B. Standard of review

In making a harmless-error analysis, we must first determine whether the error is constitutional. *See* Tex. R. App. P. 44.2(a), (b). If the error is constitutional, we apply rule 44.2(a) and reverse unless we determine beyond a reasonable doubt that the error did not contribute to the appellant's conviction or punishment. Tex. R. App. P. 44.2(a). Otherwise, we apply rule 44.2(b) and disregard the error if it did not affect the appellant's substantial rights. Tex. R. App. P. 44.2(b); *see Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070, 119 S. Ct. 1466 (1999); *Coggeshall v. State*, 961 S.W.2d 639, 642–43 (Tex. App.—Fort Worth 1998, pet. ref'd). The admission of incriminating statements made during a custodial interrogation in which no proper *Miranda* warnings were given constitutes constitutional error, and this court must reverse unless we determine beyond a reasonable doubt that the error did not contribute to the appellant's conviction. *See Williams v. State*, 958 S.W.2d 186, 194 (Tex. Crim. App. 1997); *Akins v. State*, 202 S.W.3d 879, 891–92 (Tex. App.—Fort Worth 2006, pet. ref'd.); *see also Jasper v. State*, 61 S.W.3d 413, 423 (Tex. Crim. App. 2001) (stating that when faced with non-constitutional and constitutional error, we apply the harm standard for constitutional error).

In applying this harmless-error test, the primary question we must answer is whether there is a "reasonable possibility" that the error might have contributed to the conviction. *Mosley*, 983 S.W.2d at 259. We "should take into account any and every circumstance apparent in the record that logically informs an appellate determination

13

whether 'beyond a reasonable doubt [that particular] error did not contribute to the conviction or punishment.'" *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011) (quoting Tex. R. App. P. 44.2(a)). We consider the source and nature of the error, the extent that it was emphasized by the State, its probable collateral implications, the weight a factfinder would probably place on the error, and whether declaring it harmless would be likely to encourage the State to repeat it with impunity. *Campbell v. State*, 325 S.W.3d 223, 237–38 (Tex. App.—Fort Worth 2010, no pet.). This harmless-error test requires us to evaluate the entire record in a neutral, impartial, and even-handed manner, not in the light most favorable to the prosecution. *Balderas v. State*, 517 S.W.3d 756, 810 (Tex. Crim. App. 2016). While the most significant concern must be the error and its effects, the presence of overwhelming evidence supporting the finding in question can be a factor in the evaluation of harmless error. *Motilla v. State*, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002).

## C. The alleged error did not contribute to Wilkins's conviction.

In this case, the trial court's error, if any, in admitting Wilkins's statement was harmless. Although the State mentioned Wilkins's statements in its closing argument, the State did not emphasize the statement. In fact, the State argued that the "best evidence" of Wilkins's intoxication were the facts surrounding where Wilkins was found (in a car parked in a lane of traffic on the highway with the car's engine running) and the condition that he was in at the time (passed out in a car, smelling like alcohol, with bloodshot eyes, and the inability to walk without assistance).

14

Moreover, aside from Wilkins's statement, the State offered a substantial amount of evidence that proved Wilkins was intoxicated and was the driver of the Mustang. The State presented evidence showing that Wilkins was passed out in the driver's seat of a car, with its engine running, parked in an active lane of traffic on a highway where it is unlikely that a person with the normal use of his mental and physical faculties would park. Both Wilkins and his passenger were wearing their seatbelts. The car contained an abundance of alcoholic drinks. Police officers found two open beer containers in the center console, an open thirty-pack of beer in the passenger compartment, and an open can of beer between Wilkins's legs. Additionally, Officer Kading testified that Wilkins smelled like he had consumed alcohol, had bloodshot eyes, had trouble standing and walking without assistance, and performed poorly on two of the three field sobriety tests.

In light of all this other evidence, the probable impact on the trial court of Wilkins's statement that he had been drinking the prior evening and that he was the driver of the Mustang was minimal. That is, from Officer Kading's testimony and from Wilkins's demeanor on the videotape, the trial court could have concluded beyond a reasonable doubt that Wilkins had operated the Mustang while not having the normal use of his mental or physical faculties by reason of the introduction of alcohol into his body, even if Wilkins had never made the statement that he had been drinking the evening before and that he was driving the Mustang from Coppell to Oklahoma. Furthermore, declaring the error harmless here is unlikely to encourage police officers

to fail to Mirandize drivers before questioning them in light of the specific facts in this case and with regard to the fine line between investigative detentions, which do not require *Miranda* warnings, and custodial interrogations which do. *See Campbell,* 325 S.W.3d at 239.

Accordingly, after carefully reviewing the record and performing Rule 44.2(a)'s required harm analysis, we hold beyond a reasonable doubt that the trial court's error did not contribute to appellant's conviction. *See* Tex. R. App. P. 44.2(a). We overrule Wilkins's first issue on appeal.

## IV.    Conclusion

Having overruled both of Wilkins's issues, we affirm the trial court's judgment.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  January 28, 2021