**Opinion issued November 30, 2023**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-22-00174-CR**

———————————

**OLAMIDE FEDAPO OGUNNOWO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 400th District Court
Fort Bend County, Texas
Trial Court Case No. 19-DCR-086413**

---

## MEMORANDUM OPINION

A jury convicted Appellant Olamide Fedapo Ogunnowo of the felony offense of driving while intoxicated. The trial court assessed his punishment at ten years' confinement in the Texas Department of Criminal Justice—Institutional Division, suspended the sentence, and placed Ogunnowo on community supervision for ten

years. In two issues, Ogunnowo argues on appeal there is insufficient evidence he (1) was intoxicated or (2) operated his vehicle while intoxicated.

Viewing the evidence in the light most favorable to the verdict, we conclude the evidence is sufficient to support the jury's finding that Ogunnowo committed the offense of driving while intoxicated. We affirm the trial court's judgment.

## Background

Ogunnowo was indicted for the felony offense of driving while intoxicated. Nora Garcia and Deputy Raybon Hastedt, IV testified at his trial.

### A. Nora Garcia

On January 13, 2019, Fort Bend County Sheriff's Office 9-1-1 dispatcher Nora Garcia received a call for service for an automobile accident located at the corner of Bissonnet Street and Dora Meadows Drive. The caller, who provided Garcia with her complete name and phone number, reported seeing a new BMW SUV that had driven over a curb and was parked near the fence. The caller told Garcia that the SUV's engine was running and its lights were on. When asked if anyone was in the SUV, the caller told Garcia she saw no one in the SUV, but another person who stopped to help saw the SUV's driver, who appeared to be asleep, slumped over in the driver's seat. The caller told Garcia she needed to get to work, but that the other person who had stopped to help would stay at the scene until the police arrived.

**B.      Deputy Raybon Hastedt, IV**

FBCSO Deputy Raybon Hastedt, IV testified that he was dispatched to the scene of the accident at 5:47 a.m.  When he arrived at the scene, Deputy Hastedt saw a blue BMW SUV.  The front end of the SUV was on a sidewalk and the rear end was "still in the roadway."  After speaking to someone at the scene, Deputy Hastedt approached the driver's side of the SUV.  Deputy Hastedt testified that Ogunnowo, the sole occupant, was asleep in the driver's seat with his seat belt attached and he was slouched down and leaning back in the seat.

Deputy Hastedt testified that the SUV's engine was running, and the transmission was in drive.  Deputy Hastedt put the car in park and woke Ogunnowo up.  According to Deputy Hastedt, Ogunnowo's speech was slow, and he immediately detected the odor of an alcoholic beverage on his breath.  Ogunnowo told Deputy Hastedt that he was on his way home from a baby shower and he denied consuming any alcohol.  Ogunnowo told Deputy Hastedt that he had left the baby shower at around 4 a.m.  Ogunnowo told Deputy Hastedt that "he pulled over," but he never provided a definitive answer as to why the SUV was parked partially on the sidewalk with its rear still on the street.  Ogunnowo told Deputy Hastedt that he believed he was somewhere near Highway 6, but he could not provide a cross street.  Deputy Hastedt testified that Highway 6 was about a mile and a half from the scene

of the accident. Ogunnowo told Deputy Hastedt he did not have his driver's license with him.

Based on the odor of alcohol on Ogunnowo's breath and the way he was positioned in the SUV, Deputy Hastedt decided to conduct a DWI investigation. Deputy Hastedt testified that Ogunnowo did not fall or stumble when he got out of the SUV, and although he was "kind of off balance a little bit," Ogunnowo was able to walk to the patrol car. Deputy Hastedt drove Ogunnowo to a side street where he administered three field sobriety tests.

Deputy Hastedt testified that he was certified to administer field sobriety tests after attending a three-day course in 2009 while in the training academy. According to Deputy Hastedt, the course instructors, who taught directly from the National Highway Traffic Safety Administration ("NHTSA") manual, taught him and the other participants "how to understand, interpret, and administer field sobriety tests" and identify intoxicated drivers. Deputy Hastedt testified he had conducted about 50 to 75 DWI investigations during his law enforcement career. He conducted field sobriety tests ("FSTs") during each of those investigations.

The first FST Deputy Hastedt administered to Ogunnowo was the horizontal gaze nystagmus ("HGN") test. Deputy Hastedt testified that "nystagmus is the uncontrollable jerking of the eye [that] naturally happens to everybody." According to Deputy Halstead, a person's nystagmus becomes more pronounced when they

4

consume alcohol or depressants.[1]  Before administering the HGN test to Ogunnowo, Deputy Hastedt asked Ogunnowo if he had any medical conditions or head trauma because a person with head trauma or certain medical conditions is not a good candidate for the HGN test.  Deputy Hastedt testified that Ogunnowo did not indicate he had any condition that would disqualify him from taking the HGN test.

Deputy Hastedt testified that the HGN test looks for six clues to indicate intoxication.  He observed that Ogunnowo showed all six clues. According to Deputy Hastedt, four clues on the HGN test would have been enough to indicate intoxication.  When asked if he observed any other signs of intoxication when he administered the HGN test to Ogunnowo, Deputy Halstead testified that Ogunnowo, who was standing directly in front of him, had "a slight sway to and from towards me and away from me."  During the HGN test, Deputy Hastedt repositioned Ogunnowo due to the wind.  Deputy Hastedt testified that the wind does not affect the quality of the HGN test.  Deputy Halstead testified that based on Ogunnowo's performance on the HGN test, he believed Ogunnowo's nystagmus was caused by his consumption of alcohol.

---

[1]  Deputy Halstead testified that there are several types of nystagmus, but the FST was designed to detect only a person's horizontal gaze nystagmus.  According to Deputy Halstead, horizontal gaze nystagmus can be caused by alcohol, depressants, drugs, medications, and certain medical conditions.

Deputy Hastedt then administered the walk-and-turn test. According to Deputy Hastedt, Ogunnowo's performance on the test suggested he was intoxicated. Deputy Hastedt testified that he looks for eight clues when administering the walk-and-turn test, but he listed only seven clues: (1) inability to maintain balance when receiving instructions, (2) starting to walk before being instructed to do so, (3) stepping off the line, (4) improper number of steps, (5) turning incorrectly, (6) using arms to balance, and (7) not walking heel to toe.

According to Deputy Hastedt, a person needs to exhibit only two of the eight clues on the "walk-and-turn" test to indicate intoxication. He testified Ogunnowo exhibited five clues. Ogunnowo was unable to balance during the instructional portion of the test, he started too soon, and he missed some heel-to-toe steps within a half inch of each other. He also exhibited other clues, but Deputy Hastedt said he would have to refer to his offense report to identify the clues. Deputy Hastedt testified that he reviewed the dash cam video and his offense report before trial, and there were some discrepancies between the video and his report with respect to the walk-and-turn test.

According to Deputy Hastedt, two of the walk-and-turn test clues he included in his offense report were different from those depicted in the dash cam video. Deputy Hastedt testified the video showed only five clues, including balancing during the instructional phase, missing heel-to-toe steps, stepping off the line,

6

improper turn, and starting the test too soon. He listed five clues in his report. But two of the clues listed in the report were not supported by the dash cam video, and the video supports two other clues not included in the report.[2] Either way, Deputy Hastedt testified that Ogunnowo showed five clues of intoxication on the walk-and-turn test.

Deputy Hastedt testified that during the FSTs, he allowed Ogunnowo to retrieve his jacket from his car because he was cold and shaking. Deputy Hastedt, who told Ogunnowo the cold would not affect his performance on the FSTs, testified that according to research, "field conditions" will not affect someone's performance on an FST unless the conditions are extreme. Deputy Hastedt testified he was wearing a jacket and hat when he administered the FSTs to Ogunnowo, but he did not recall the temperature that night. Based on the dash cam video, Deputy Hastedt testified that he Ogunnowo exhibited five out of eight clues on the walk-and-turn test.

Deputy Hastedt also administered the one-leg-stand test. He explained there are a maximum of four clues on the one-leg-stand test and that the minimum number of clues necessary to indicate intoxication is two. Deputy Hastedt testified that although he stated in his offense report that Ogunnowo had shown all four clues of

---

[2] On cross-examination, Deputy Hastedt testified that his offense report incorrectly stated that Ogunnowo used his arm for balance and stopped walking during the test.

7

intoxication on the one-leg-stand test, after watching the dash cam video, he determined Ogunnowo had shown only three clues total: swaying, using his arms for balance, and putting his foot down.

Based on his observations, including Ogunnowo's performance of the FSTs, Deputy Hastedt arrested Ogunnowo for being intoxicated while driving a motor vehicle. Deputy Hastedt read Ogunnowo the statutory warnings included in the DIC-24 form.[3] He asked Ogunnowo to submit to a breath or blood test, but Ogunnowo refused. The DIC-24 form was admitted into evidence as State Exhibit 6.

On cross examination, Deputy Hastedt testified that the DIC-23 form "is a sworn statement [that] has the information pertaining to . . . the offense report."

---

[3] The DIC–24 statutory warning form is a standard Texas Department of Public Safety form containing warnings required to be read to individuals arrested for DWI offenses before a peace officer requests a voluntary blood or breath sample. *Bonsignore v. State*, 497 S.W.3d 563, 566 n.3 (Tex. App.—Fort Worth 2016, pet. ref'd); *see* TEX. TRANSP. CODE § 724.015.

The DIC-24 form states in part:

I am now requesting a specimen of your □ Breath □ Blood

□ Subject refused to allow the taking of a specimen and further refused to sign below as requested by this officer.

OR

□ Subject refused to allow the taking of a specimen as evidenced by his/her signature below.

8

Deputy Hastedt testified he did not complete the DIC-23 form the day he arrested Ogunnowo, and he acknowledged the report contains some mistakes.[4]

Among other mistakes, the DIC-23 form includes the wrong date and time of the alleged offense, and it incorrectly identifies the road on which he found Ogunnowo and the reasonable suspicion for the stop as "failure to maintain a single marked lane matched the description of a reckless driver on SH-332 East." Additionally, some of the intoxication signs listed in the probable cause for arrest or detention section of the DIC-23 are different from the signs of intoxication Deputy Hastedt included in his offense report. In the DIC-23 form, Deputy Hastedt reported that Ogunnowo had slurred speech and the odor of an unknown alcoholic beverage on his breath and person, but these signs of intoxication were not included in Deputy Hastedt's offense report. Deputy Hastedt testified that Ogunnowo's breath had the odor of alcohol, but not his person.

On the DIC-24 form admitted as State Exhibit 6, Deputy Hastedt reported that Ogunnowo refused to provide a specimen of his breath and he checked the box indicating Ogunnowo had "refused to allow the taking of a specimen and further refused to sign below as requested by this officer." Deputy Hastedt testified that he did not ask Ogunnowo to sign the form.

---

[4] The marked DIC-23 form does not appear to have been admitted into evidence.

Deputy Hastedt also testified that he revised his offense report after meeting with the prosecutor and watching the dash cam video. Deputy Hastedt testified that he incorrectly identified two of the clues of intoxication Ogunnowo exhibited on the walk-and-turn test as "used arm for balance" and "stopped once he begun the test." Based on the dash cam video, Deputy Hastedt testified that he incorrectly demonstrated the walk-and-turn test to Ogunnowo because he did not count the three steps on the way back as required.

Deputy Hastedt testified that there was a man standing near Ogunnowo's SUV when he arrived. He spoke to the man briefly, but he did not get his name or ask him to give a written statement. Deputy Hastedt testified that the SUV was not damaged, he did not see Ogunnowo drive, or ask him if he had fallen asleep. And no witness reported seeing Ogunnowo driving or reported Ogunnowo for reckless driving.[5] Deputy Hastedt testified that although he put the SUV into the park position, he did not believe he turned off the SUV's engine. "He might have done that."

Even though he could have done so, Deputy Hastedt did not get a warrant from a magistrate to have Ogunnowo's blood drawn to test for alcohol. He testified

---

[5] The caller who called 9-1-1 on the day of incident reported seeing a new BMW SUV that had driven over a curb and was parked near the fence. The caller stated the SUV's engine was running and its lights were on.

Ogunnowo did not need help to get out of the SUV and he did not stumble or lose his balance walking from the SUV to Deputy Hastedt's patrol car.

Deputy Hastedt admitted that the NHTSA manual required him to remain as "motionless as possible" while Ogunnowo performed the walk-and-turn and one-leg-stand tests. Deputy Hastedt stated he "would have to watch the video to see" if he had remained standing in one place.

Deputy Hastedt testified Ogunnowo complained during the HGN test that the wind was blowing in his eyes. When asked if wind is a condition that may interfere with a person's performance on the HGN test, Deputy Hastedt testified that "it might say so in the [NHTSA] manual," but he did not believe that wind would necessarily interfere with performance on the HGN test based on validation studies he learned during his three-day DWI training class. Deputy Hastedt testified that wind:

> could make it difficult for you to perform the test; but it's not going to interfere with the nystagmus itself per se, if that makes sense. So nystagmus is still going to be there or not be there. But as far as your observations, you'll still be able to see it.

When asked if the presence of wind could invalidate a HGN test, Deputy Hastedt testified:

> the performance of the test is the person to actually keep their eyes open so that you can see the nystagmus. It doesn't necessarily mean that it's going to affect the nystagmus. It's your observations. It's how clear you'll be able to observe it. It'll still be there, though.

11

After the State rested, Ogunnowo moved for a directed verdict, which the trial court denied. Ogunnowo called no witnesses, and he presented no evidence to the jury.

The jury returned a verdict of guilty for the felony offense of DWI. After conducting a punishment hearing, the trial court assessed Ogunnowo's punishment at ten years, suspended the sentence, and ordered that Ogunnowo be placed on community supervision for a term of ten years.

This appeal followed.

## Sufficiency of the Evidence

In two issues, Ogunnowo argues there is insufficient evidence that (1) he was intoxicated or (2) operated a motor vehicle while intoxicated.

## A.     Standard of Review

We review an appellant's challenge to the legal sufficiency of the evidence under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). We examine the evidence in the light most favorable to the jury's verdict to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). Our review includes all the evidence introduced, whether properly or improperly admitted. *See Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *see also Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App.

2006) ("[A] reviewing court is permitted to consider all evidence in the trial-court record, whether admissible or inadmissible, when making a legal-sufficiency determination.").

"The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses." *Merritt*, 368 S.W.3d at 525 (citing *Jackson*, 443 U.S. at 319). As the sole factfinder, the jury may reasonably infer facts from the evidence presented, credit the witnesses it chooses, disbelieve any or all of the evidence or testimony proffered, and weigh the evidence as it sees fit. *See Canfield v. State*, 429 S.W.3d 54, 65 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). We afford almost complete deference to the jury's determinations of credibility. *See id.* (citing *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008)). In the event of conflicting evidence, we presume the jury resolved conflicts in favor of the verdict and defer to that determination. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010); *Canfield*, 429 S.W.3d at 65. Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient. *See Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016).

**B.    Applicable Law**

A person commits the misdemeanor offense of DWI "if the person is intoxicated while operating a motor vehicle in a public place." TEX. PENAL CODE

§ 49.04(a). DWI is elevated to a third-degree felony if the person has previously been convicted of DWI twice. *Id.* § 49.09(b)(2).

The Penal Code defines "intoxication" as either (1) "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body," known as the "impairment theory," or (2) "having an alcohol concentration of 0.08 or more." *Id.* § 49.01(2). Evidence that a person is intoxicated because the person did not have "normal use of mental or physical faculties by reason of the introduction of alcohol" may be established through a lay witness' testimony. *See Annis v. State*, 578 S.W.2d 406, 407 (Tex. Crim. App. [Panel Op.] 1979) (holding law enforcement officer's testimony about his observations of defendant's driving, physical appearance, post-driving behavior, and his conclusion of intoxication was sufficient); *Zill v. State*, 355 S.W.3d 778, 785–86 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (stating "[t]he testimony of a police officer regarding the defendant's behavior and the officer's opinion that the defendant is intoxicated provides sufficient support to uphold a jury verdict").

Evidence that supports an inference of intoxication includes a defendant's inability to perform FSTs or follow directions, slurred speech, unsteady balance, and the odor of alcohol on the defendant's breath. *See Kirsch v. State*, 306 S.W.3d 738

14

(Tex. Crim. App. 2010) (stating evidence that supports inference of intoxication includes "all of the usual indicia of intoxication"); *Zill*, 355 S.W.3d at 785–86 (stating evidence of intoxication includes "slurred speech, bloodshot or glassy eyes, unsteady balance, a 'staggering gait,' and the odor of alcohol on the person or on her breath").  A defendant's refusal to submit to a breath test or blood test may also support a finding of intoxication.  *See Bartlett v. State*, 270 S.W.3d 147, 153 (Tex. Crim. App. 2008) ("Evidence of the [defendant]'s refusal to submit to a breath test is relevant [because] it tends to show a consciousness of guilt on his part.").

Separate from evidence of intoxication, there must also be a temporal link between a defendant's intoxication and his operation of a motor vehicle.  *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex Crim. App. 2010) (stating "in order for the evidence to be sufficient to support a conviction for driving while intoxicated, there must be a temporal link between [a] defendant's intoxication and his driving"). Although the Texas Penal Code does not define the term "operate," the Court of Criminal Appeals has explained that, in a sufficiency review, "a person 'operates' a vehicle when 'the totality of the circumstances [ ] demonstrate that the defendant took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use.'" *Kirsch*, 357 S.W.3d at 650–51 (quoting *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995)); *Kinnett v. State*, 623 S.W.3d 876, 898 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd) (stating term "operating" is interpreted

15

broadly). Thus, "any action that is more than mere preparation toward operating the vehicle" constitutes "operation" of the vehicle, even if the actions fail. *Smith v. State*, 401 S.W.3d 915, 919–20 (Tex. App.—Texarkana 2013, pet. ref'd) ("One can be operating a car without actually causing the vehicle to function.").

While driving involves the operation of a motor vehicle, "operation does not necessarily involve driving." *Denton*, 911 S.W.2d at 389. Indeed, this court and other Texas courts have upheld DWI convictions when the person found "operating a motor vehicle" was either asleep or unconscious in the vehicle. *See White v. State*, 412 S.W.3d 125, 127, 129 (Tex. App.—Eastland 2013, no pet.) (holding there was sufficient evidence to show defendant was operating vehicle while intoxicated when defendant was found sitting in restaurant's drive-through lane, "passed out" behind steering wheel of vehicle with engine running, transmission in drive, and brake lights illuminated); *Dornbusch v. State*, 262 S.W.3d 432, 433, 437–38 (Tex. App.—Fort Worth 2008, no pet.) (holding there was sufficient evidence to show defendant was operating vehicle while intoxicated when defendant was found either asleep or passed out in driver's seat of car in restaurant's parking lot with headlights on and engine running); *Freeman v. State*, 69 S.W.3d 374, 375–76 (Tex. App.—Dallas 2002, no pet.) (holding there was sufficient evidence to show defendant had operated vehicle while intoxicated when defendant was found asleep in car "with its right front tire against a curb, its motor running, the gear in the 'drive' position, and its

lights on"); *Hearne v. State*, 80 S.W.3d 677, 679–80 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (holding there was sufficient circumstantial evidence to show defendant had operated vehicle while intoxicated when defendant was found asleep in driver's seat of truck stopped in moving lane of traffic with its engine running); *Milam v. State*, 976 S.W.2d 788, 789 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd) (holding there was sufficient circumstantial evidence to show defendant had operated vehicle while intoxicated when defendant was found passed out in vehicle in parking lot, with engine running, vehicle in gear, and his foot on brake).

## C. Evidence Ogunnowo was Intoxicated

Ogunnowo argues there is insufficient evidence he was intoxicated because "the State showed no driving facts, and potential but unconfirmed operating facts, only the smell of alcohol on [Ogunnowo's] breath, and FSTs performed contrary to recommendations in the NHTSA manual." Ogunnowo also argues that Deputy Hastedt "should not have been allowed to testify about his observations and findings from his administration of the HGN test, and the HGN test should have been suppressed by the trial court." Ogunnowo argues that Deputy Hastedt's "failure to follow the standardized procedures outlined in the NHTSA manual should have invalidated all three FSTs." Even assuming Deputy Hastedt's testimony about the three FSTs was inadmissible, and Ogunnowo preserved the issue for appellate review, we may nevertheless consider this evidence for purposes of our sufficiency

17

analysis. *See Winfrey*, 393 S.W.3d at 767 (stating for purposes of sufficiency analysis, courts consider all evidence admitted at trial, whether properly or improperly admitted).[6]

Deputy Hastedt testified he was dispatched to the scene of an accident. When he arrived, he saw that an SUV had driven over a curb and was parked on a sidewalk, with the SUV's rear end still in the roadway. According to Deputy Hastedt, Ogunnowo, the SUV's sole occupant, was asleep and slouched over in the driver's seat while wearing his seatbelt. The SUV's engine was on, and the transmission was in drive. Deputy Hastedt testified that Ogunnowo's speech was slow, and he immediately detected the odor of an alcoholic beverage on Ogunnowo's breath. *See Cotton v. State*, 686 S.W.2d 140, 142 n.3 (Tex. Crim. App. 1985) (stating that "odor of alcohol on the person" is evidence of intoxication). Deputy Hastedt testified that although Ogunnowo was "kind of off balance a little bit," he was able to walk to

---

[6]  Appellant argues that "Hastedt was not qualified to administer the HGN test to Appellant in 2019" because Section 221.9(a)(4) of the Texas Administrative Code requires that law enforcement officers must recertify every two years for HGN test administration, and Hastedt was last certified in 2009. According to Appellant, the trial court "should have suppressed any testimony from Hastedt about the HGN test and its results because of Hastedt's failure to recertify for roughly 8 years after his certification expired." Section 221.9(a)(4) of the Texas Administrative Code, however, was repealed in 2011, and is thus inapplicable to the present case. Moreover, this issue is not preserved because Ogunnowo did not raise this argument in the trial court. *See* TEX. R. APP. P. 33.1(a); *see also Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) (appellate issue "must correspond to the objection made at trial").

18

Deputy Hastedt's patrol car. *See Kirsch*, 306 S.W.3d at 738 (stating evidence of unsteady balance supports inference of intoxication).

Deputy Hastedt administered three FSTs to Ogunnowo: the HGN test, the walk-and-turn test, and the one-leg-stand test. According to Deputy Hastedt, a person needs to exhibit at least four of the six clues on the HGN test to indicate intoxication and Ogunnowo exhibited all six clues. A person needs to exhibit at least two of the eight clues on the "walk-and-turn" test to indicate intoxication and Ogunnowo exhibited five clues. A person needs to exhibit a minimum of two of the four clues of intoxication on the one-leg-stand test to indicate intoxication and Ogunnowo exhibited three clues. *See id.* (stating person's inability to perform FSTs or follow directions supports inference of intoxication). Deputy Hastedt also testified that after he arrested Ogunnowo for DWI, he asked Ogunnowo to submit to a breath test, and Ogunnowo refused. *See Bartlett*, 270 S.W.3d at 153 ("Evidence of the [defendant]'s refusal to submit to a breath test is relevant [because] it tends to show a consciousness of guilt on his part.").

Appellant argues that Deputy Hastedt did not strictly follow the NHTSA manual with respect to the administration of the three FSTs, such as when he failed to count some of his steps when he was demonstrating the walk-and-turn test. Ogunnowo's counsel, however, cross-examined Deputy Hastedt concerning his training and certification to administer FSTs, and the proper technique for

administering such tests, and as the trier of fact, it was within the jury's sole province to determine the weight to be given his testimony. *See Canfield*, 429 S.W.3d at 65 (stating that, as sole factfinder, jury may credit the witnesses it chooses, disbelieve any or all of the evidence or testimony proffered, and weigh evidence as it sees fit); *see also Williams v. State*, 525 S.W.3d 316, 324 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (stating slight variations in administration of FSTs may affect weight to be given testimony but do not render evidence inadmissible or unreliable). Although Ogunnowo points to discrepancies between Deputy Hastedt's testimony, the DIC-23 and DIC-24 forms he completed, and the dash cam video, it was the province of the jury to assess Deputy Hastedt's credibility, determine the weight to give to his testimony, and resolve any conflicts in the evidence. We presume the jury resolved conflicts in favor of the verdict and we defer to that determination. *Merritt*, 368 S.W.3d at 525 ("The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses.").

After reviewing all the evidence in the light most favorable to the jury's verdict, whether properly or improperly admitted, we conclude the jury could have found beyond a reasonable doubt that Ogunnowo was intoxicated. *See Jackson*, 443 U.S. at 319; *see also Winfrey*, 393 S.W.3d at 767 (stating courts consider properly and improperly admitted evidence when conducting sufficiency analysis).

We overrule Ogunnowo's first issue.

**D. Evidence Ogunnowo Operated a Motor Vehicle While Intoxicated**

In his second issue, Ogunnowo argues the evidence is insufficient to establish he was operating the SUV while intoxicated because (1) no one saw him driving the SUV or reported seeing a vehicle matching the SUV's description driving recklessly, (2) there is no evidence he was "otherwise acting to operate the vehicle," and (3) even if there is evidence he had been driving the SUV home from a baby shower, there is no evidence of how long the SUV was stopped on the curb before Deputy Hastedt arrived, and thus no evidence of a temporal link between his alleged intoxication and his operation of the SUV.

The State argues there is sufficient evidence that Ogunnowo was operating the SUV when Deputy Hastedt arrived because Deputy Hastedt found Ogunnowo asleep in the driver's seat of the SUV while the SUV's engine was running, and its transmission was in drive. The State further contends that Deputy Hastedt's testimony about his contemporaneous observations and conclusions about Ogunnowo's intoxication establish the temporal link between Ogunnowo's intoxication and his operation of the SUV.

The 9-1-1 caller reported that an SUV had driven over a curb and was parked near the fence. The caller told the 9-1-1 dispatcher that the SUV's engine was running, its lights were on, and the driver, who appeared to be asleep, was slumped over in the driver's seat. Deputy Hastedt testified that when he arrived at the scene

21

at 5:47 a.m., he saw an SUV that "had gone up and over the curb." According to Deputy Hastedt, the SUV's front end was on the sidewalk and "the back end of it was actually in the roadway." Deputy Hastedt testified that Ogunnowo was asleep in the driver's seat with his seat belt attached and he was slouched down and leaning back in the seat. The SUV's engine was running, and the transmission was in drive. Deputy Hastedt testified that although he put the SUV's transmission in park, he did not believe he turned off the SUV's engine. Appellant was the sole occupant of the SUV, and no alcoholic substances or containers were found in the vicinity. Courts have upheld DWI convictions in similar circumstances. *See Dornbusch*, 262 S.W.3d at 433, 437–38 (holding there was sufficient circumstantial evidence to show defendant had operated vehicle while intoxicated when defendant was found asleep, "hunched over the steering wheel" in parking lot with headlights on and loud music playing and where "there was testimony indicating that the vehicle was not in park and that the only thing keeping the vehicle from moving was the curb"); *Freeman*, 69 S.W.3d at 375–76 (holding there was sufficient circumstantial evidence to show defendant had operated vehicle while intoxicated when defendant was found asleep in driver's seat of vehicle, while vehicle's wheel was "rest[ing] against the curb of a public street," engine was running, gear was in "drive," and lights were on).

Appellant relies on *Texas Department of Public Safety v. Allocca* to argue there is insufficient evidence he was "operating" the SUV while intoxicated. 301

S.W.3d 364 (Tex. App.—Austin 2009, pet. denied). But the facts in *Allocca* are distinguishable. In *Allocca*, the defendant was arrested and charged with DWI after police, who had been dispatched to investigate a suspicious vehicle, found the defendant sleeping in his car parked in a Jiffy Lube parking lot. *Id.* at 366. The defendant, who worked at Jiffy Lube, testified he left his vehicle parked behind the store when he went drinking with friends after work. *Id.* When his friend's girlfriend dropped him off at the Jiffy Lube later that evening, the defendant recognized he should not drive and decided to sleep in his car. *Id.* The driver's seat was reclined, the defendant's feet were on the floorboard, the vehicle was in park and the headlights were off. *Id.* Although the car was not running when the defendant initially went to sleep, the defendant woke up and turned the engine on because he was hot and wanted to use the air conditioning. *Id.* The court of appeals held that the police officer did not have probable cause to believe Allocca was operating or had operated his vehicle while intoxicated when Allocca's car was "not stopped in the middle of a roadway or in a moving lane of traffic," his foot was not on brake, car's headlights were not on, car was in park, and driver's seat was "reclined to better accommodate sleeping." *Id.* at 368–70.

Unlike in *Allocca*, Appellant's SUV was not legally parked, the SUV's transmission was in drive, its lights were on, and its back end was on the roadway. While Ogunnowo was asleep in the driver's seat, the seat was not reclined.

23

Ogunnowo was slouched over with his seatbelt on, and he had no explanation for why he was asleep in the SUV or why half the SUV was in the curb and the other on the road.[7]

Viewing the evidence in the light most favorable to the verdict, the totality of the circumstances supports an inference that Ogunnowo operated the SUV while intoxicated, and thus, the evidence is sufficient to support the jury's finding that Appellant committed the offense of driving while intoxicated. *See Jackson*, 443 U.S. at 319; *Denton*, 911 S.W.2d at 390.

We overrule Ogunnowo's second issue.

## Conclusion

We affirm the trial court's judgment.


Veronica Rivas-Molloy
Justice


Panel consists of Justices Goodman, Rivas-Molloy, and Guerra.

Do Not Publish. TEX. R. APP. P. 47.2(b).

---

[7]     *Cf. State v. Espinosa*, 666 S.W.3d 659, 669 (Tex. Crim. App. 2023) (holding officer had probable cause to believe defendant was operating vehicle while intoxicated and stating "[t]his Court has never adopted the court of appeals' reasoning [in *Allocca*], and it is distinguishable").